EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br><br><br>Edwin R. Colón Torres<br>(TS-9,066) | 2026 TSPR 72<br><br>218 DPR ___ |

Número del Caso: CP-2024-0006

Fecha: 6 de julio de 2026

Oficina del Procurador General:

Hon. Omar Andino Figueroa
Procurador General

Lcda. Mabel Sotomayor Hernández
Subprocuradora General

Lcdo. Edwin B. Mojica Camps
Subprocurador General

Lcda. Yaizamarie Lugo Fontánez
Procuradora General Auxiliar

Lcda. María del C. Ortiz Toral
Procuradora General Auxiliar

Representante legal del querellado:

Lcda. Daisy Calcaño López

Materia: Conducta Profesional – Suspensión inmediata del ejercicio de la abogacía y la notaría por el término de tres (3) meses por infringir los Cánones 18, 20, 23, 24 y 35 del Código de Ética Profesional.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | | Conducta |
|---|---|---|
| | CP-2024-0006 | Profesional |
| Edwin R. Colón Torres (TS-9,066) | | |

*PER CURIAM*

En San Juan, Puerto Rico a 6 de julio de 2026.

Nuevamente, nos vemos en la obligación de ejercer nuestra facultad de disciplinar a los miembros de la profesión legal. Específicamente, nos corresponde dilucidar si el promovido incurrió en conducta violatoria de los Cánones 18, 20, 23, 24 y 35 del Código de Ética Profesional, *infra*, en el ejercicio de sus funciones como abogado y notario durante los trámites de una Sucesión.[1] Examinado el Informe de la Comisionada Especial, así como los demás escritos que obran en el expediente, se ordena al abogado devolver los honorarios adelantados y se le suspende del ejercicio de la abogacía y la notaría por un término de tres (3) meses. En adelante, repasamos el tracto que da lugar al presente procedimiento disciplinario.

---

[1] La conducta que dio lugar a esta acción disciplinaria aconteció antes de la entrada en vigor de las nuevas Reglas de Conducta Profesional, *In re Rs. Conducta Prof. PR*, 2025 TSPR 64, 216 DPR ___ (2025). Por consiguiente, evaluaremos la conducta del letrado a la luz de los postulados del derogado Código de Ética Profesional, 4 LPRA Ap. IX.

**I**

El Lcdo. Edwin R. Colón Torres (licenciado Colón Torres o promovido) fue admitido al ejercicio de la abogacía en Puerto Rico el 19 de enero de 1989 y a la notaría el 22 de febrero de 1989.

El 14 de febrero de 2023, la Sra. Zaira Ramos Rodríguez y el Sr. Adalberto Ramos Rodríguez (en conjunto, promoventes o hermanos Ramos Rodríguez) presentaron una Queja contra el licenciado Colón Torres, identificada con el alfanumérico AB-2023-0036, en la que solicitaron que se investigara la conducta del promovido. En síntesis, los hermanos Ramos Rodríguez relataron que en el año 2013 contrataron los servicios del licenciado Colón Torres para que realizara los trámites de la sucesión de su progenitora, la Sra. María del Rosario Rodríguez (Sucesión), a base de honorarios del quince por ciento (15%) del caudal hereditario. Indicaron que, aunque el promovido realizó varias gestiones, no culminó el trabajo encomendado. Manifestaron que el licenciado Colón Torres fungió como notario en el otorgamiento de la Escritura de Compraventa del inmueble en Vega Baja y que, en ese contexto, retuvo un sobrante de una suma de dinero que había sido destinada como parte de la transacción al pago de: la deuda con el Centro de Recaudación de Impuestos Municipales (CRIM), el balance de la hipoteca,

los honorarios, los sellos y los comprobantes de las escrituras de compraventa y de cancelación de hipoteca.[2]

Además, explicaron que el caudal de la finada consistía, entre otros bienes, de tres inmuebles ubicados en los municipios de Vega Baja, Manatí y Ciales. Asimismo, los promoventes añadieron que el licenciado Colón Torres no presentó la Escritura de Compraventa Núm. 10 de 28 de septiembre de 2013 (Escritura de Compraventa) en el Registro Digital Inmobiliario de Puerto Rico (Registro), no otorgó la Escritura de Cancelación de la Hipoteca que gravaba el inmueble, no preparó la Instancia ni solicitó el Relevo del Departamento de Hacienda (Relevo). Por ello, sostuvieron que el promovido cobró honorarios por trabajos que no realizó.

Los hermanos Ramos Rodríguez relataron que, transcurridos nueve años desde la contratación del promovido, no los mantuvo informados sobre las gestiones encomendadas. Indicaron que a partir de septiembre de 2013 no tuvieron comunicación con el licenciado Colón Torres y que, en el año 2017, al acudir a su oficina, se percataron de que este se había mudado. Expresaron que no fue sino hasta el año 2022 que pudieron reunirse con el promovido, ocasión en la que este les entregó el expediente y una carta explicativa. Al estudiar los documentos, encontraron que el licenciado Colón Torres había retenido y dispuesto de las

---

[2] Al respecto, detallaron que el licenciado Colón Torres retuvo indebidamente el sobrante neto de la compraventa -más de cincuenta mil dólares ($50,000)- que pertenecía a la Sucesión, sin que los promoventes hubieran recibido suma alguna de dicha transacción.

sumas provenientes de la compraventa sin que estas fuesen utilizadas para el propósito acordado.

Además, alegaron que luego de esa reunión, enviaron una carta al licenciado Colón Torres solicitando la devolución del dinero retenido en exceso y dando por terminada la relación profesional. Finalmente, tras una serie de cartas de seguimiento, y ante la falta de una respuesta satisfactoria, los promoventes presentaron la Queja y solicitaron la devolución de $51,471.48.[3]

El 1 de mayo de 2023, el promovido contestó la Queja. Relató que, en julio de 2013, suscribió un Contrato con los hermanos Ramos Rodríguez para la adjudicación de los derechos hereditarios, pactando honorarios equivalentes al quince por ciento (15%) del caudal hereditario más un *retainer* de $1,000. Sostuvo que los gastos necesarios para la tramitación de los servicios contratados eran responsabilidad de los promoventes. Indicó que el caudal neto de la Sucesión era de $429,308.94, por lo que los honorarios pactados totalizaban $64,396.34, y que hasta ese momento le habían pagado $37,491.49. Negó haber retenido suma alguna en exceso del quince por ciento (15%) del caudal neto de la causante.

De igual forma, indicó que tras suscrito el Contrato, realizó diversas gestiones en beneficio de la Sucesión. Entre estas, detalló que se comunicó con varias

---

[3] Además, solicitaron el resarcimiento de los daños y perjuicios causados, sin embargo, advertimos que tal reclamo deberá ventilarse en la vía civil ordinaria.

instituciones bancarias y de inversiones para auscultar los activos de la causante; procuró las certificaciones correspondientes; presentó la *Petición de Declaratoria de Herederos* ante el Tribunal de Primera Instancia competente y la Planilla sobre caudal relicto ante el Departamento de Hacienda. Añadió que intervino en representación de la Sucesión en varios pleitos que no estaban contemplados en el Contrato.[4] Afirmó que el 27 de agosto de 2013 solicitó al Departamento de Hacienda autorización para vender el inmueble de Vega Baja y que obtuvo la *Autorización para Efectuar Transacciones con Bienes y Valores* del Departamento de Hacienda. Alegó que, al obtener dicha autorización, pudo completarse la compraventa de la propiedad.

Además, relató que, como parte de la compraventa, los compradores retuvieron ciertas cantidades para el pago de deudas según lo había requerido el Departamento de Hacienda en la autorización expedida. Indicó que fungió como notario en la compraventa y que **los honorarios por ese servicio notarial no formaban parte de la contratación relacionada con la Sucesión, por lo que se facturaron y cobraron aparte.**[5]

---

[4] El Lcdo. Edwin Colón Torres arguyó que intervino en varios pleitos en representación de los herederos. Específicamente, en el Caso Civil Núm. CD2011-3315, *Doral Bank v. Adalberto Ramos Domínguez, María del Rosario Rodríguez De Jesús y otros* ante el Tribunal de Primera Instancia, Sala de Bayamón sobre Cobro de Dinero y Ejecución de Hipoteca y en el Caso Civil Núm. CM2013-876 ante el Tribunal de Primera Instancia, Sala de Manatí, en una Demanda que la Asociación de Residentes de Estancias de Tortuguero, Inc. incoó en cobro de cuotas de mantenimiento. En cuanto a esto, puntualizó que dichas intervenciones no estaban cubiertas por el Contrato —pues desconocía de su existencia al momento de la contratación— pero que no cobró honorarios adicionales por ellas. Por tanto, estas labores no serán consideradas por estar fuera del Contrato.

[5] Específicamente, detalló que el inmueble se vendió por $210,000 y que los pagos y retenciones totalizaron $205,944.50, desglosados de la siguiente manera: $93,035.51 para el pago de la hipoteca de Doral Bank;

Sobre las sumas retenidas, aseveró que no dispuso de las mismas sin que estas fueran utilizadas para su propósito, ni cobró por trabajo no realizado. Alegó que los hermanos Ramos Rodríguez acordaron que cualquier remanente, luego de liquidar las deudas del inmueble de Vega Baja, le sería entregado como adelanto de honorarios.[6] No obstante, surge del Requerimiento de Información, producto de la investigación de la Oficina del Procurador General de Puerto Rico (OPG), que los promoventes negaron la existencia de un acuerdo con los compradores para la distribución del remanente de lo retenido y lo pagado en relación con la propiedad sita en Vega Baja.

En cuanto al Relevo del Departamento de Hacienda (Relevo), explicó que, al investigar el asunto en el 2022, descubrió que la agencia contributiva había emitido el relevo el 29 de abril de 2019, pero que el documento nunca llegó a su oficina. **Indicó que tenía la Instancia sobre la propiedad de Vega Baja preparada, con sus sellos y notarizada**

---

$3,128.50 para el cheque a nombre del Secretario de Hacienda por sellos y comprobantes de las Escrituras de compraventa y de cancelación de hipoteca; $4,289.00 para el pago de sus honorarios notariales de la Escritura de Compraventa y Escritura de Cancelación de Hipoteca; $7,542.33 como abono a los honorarios legales por el trámite sucesoral; $5,949.16 para el pago a la Asociación de Residentes de Estancias de Tortuguero, Inc.; $60,000.00 para el pago de la hipoteca de Eurobank, cuyo pagaré estaba en posesión de Oriental Bank; $2,000.00 para el pago de contribuciones especiales; y $30,000.00 para el pago del CRIM. Indicó que la diferencia entre el precio de venta y las cantidades retenidas ya había sido recibida por la causante mediante los $5,000 que esta recibió con la firma del contrato de opción de compraventa.

[6] Explicó que, en virtud de dicho acuerdo, los compradores emitieron dos cheques a su orden, a saber: uno por $949.16, de 21 de noviembre de 2013, y otro por $28,000, de 24 de marzo de 2014, correspondientes a los sobrantes del pago a la Asociación de Residentes y a la hipoteca de Eurobank, respectivamente. Sobre este último, explicó que los compradores retuvieron $60,000 para pagar la hipoteca, pero que la deuda se saldó por $32,000, por lo que recibió el sobrante de $28,000 como adelanto de los honorarios pactados.

**desde el 26 de septiembre de 2013, pero que no la había presentado porque estaba en espera del Relevo**. Sostuvo que solicitó y obtuvo el Relevo, pero cuando se emitió ya había recibido las comunicaciones de los promoventes en las que se formulaban varias imputaciones así que decidió no continuar con los trámites hasta que se aclarara el asunto. Adujo que los documentos correspondientes a las otras dos propiedades estaban preparados, pero que el dinero para los aranceles debía ser aportado por la Sucesión.

Por otro lado, explicó que quedó en espera de que los promoventes se comunicaran para continuar los trámites pendientes. Aseveró que a finales del año 2014 mudó su despacho y que instruyó a su personal administrativo para que notificara de ello a sus clientes.[7] Sostuvo que luego del otorgamiento de la Escritura de Compraventa pagó las deudas que el Departamento de Hacienda había requerido para emitir el Relevo y quedó en espera de este para completar los trámites del inmueble en Vega Baja.

En lo atinente a los inmuebles de Ciales y Manatí, explicó que la Sucesión no contaba con los fondos necesarios para sellos, aranceles y la Escritura de Partición de Herencia, y que las partes acordaron comunicarse eventualmente para concluir esos trámites. Por último, añadió que restaba presentar la Escritura de Compraventa con el Relevo y culminar la gestión de las otras dos propiedades,

---

[7] En esa línea, añadió que su número de teléfono, celular, correo electrónico y dirección postal no sufrieron cambios y que esa información era de conocimiento de los promoventes.

y que estaba a disposición de completar el trabajo encomendado.

Así las cosas, este Tribunal refirió el asunto a la OPG. En cumplimiento con lo anterior, el 21 de diciembre de 2023, la referida dependencia gubernamental presentó el respectivo *Informe*. En síntesis, sostuvo que el licenciado Colón Torres se apartó de los Cánones 18, 20, 23, 24 y 35 del Código de Ética Profesional y recomendó que se le ordenara al promovido devolver $24,331.99 en concepto de honorarios adelantados por servicios no prestados.[8] Para arribar a dicha cuantía, la OPG tomó la suma de los bienes adjudicados de $217,765.48, dedujo los pasivos correspondientes de $130,035.51 y obtuvo un caudal neto de $87,729.97. Aplicado el quince por ciento (15%) pactado en el Contrato, concluyó que, al momento en que los promoventes solicitaron la culminación de la relación profesional, el promovido únicamente tenía derecho a retener la cantidad de $13,159.50 en concepto de honorarios.

Respecto al Canon 18 de Ética Profesional, *supra*, el *Informe* precisó que el licenciado Colón Torres no fue diligente en la tramitación del Relevo, lo que impidió la presentación oportuna de la Instancia sobre los derechos

---

[8] En el *Informe*, la Oficina del Procurador General señaló que el promovido admitió haber recibido $37,491.49 en honorarios por los trámites de adjudicación, a pesar de no haberlos culminado. Sin embargo, reclamó la totalidad del quince por ciento (15%) del caudal neto de la causante, aun cuando la adjudicación no había concluido. Por ello, concluyó que el licenciado Colón Torres retenía $24,331.99 por servicios no prestados. En cuanto a la sanción, recomendó que, una vez acreditada la devolución, se archivara la Queja, no sin antes amonestar y apercibir al licenciado de que en el futuro debía dar fiel cumplimiento a los Cánones de Ética Profesional.

hereditarios de los promoventes en el Registro. Por otro lado, en lo atinente al Canon 20 de Ética Profesional, *supra*, la OPG señaló que, conforme al Contrato, el promovido se obligó a brindar sus servicios legales en relación con todo el procedimiento de adjudicación de los derechos hereditarios de la Sucesión.

En cuanto al Canon 23 de Ética Profesional, *supra*, precisó que, en atención al acuerdo firmado por los hermanos Ramos Rodríguez —mediante el cual pactaron que cualquier remanente entre la cantidad retenida y la efectivamente pagada por las deudas sería entregada al abogado como adelanto de honorarios— no contaba con prueba suficiente para concluir que el promovido infringió dicho Canon al recibir de los compradores el sobrante como adelanto de sus honorarios. Sin embargo, entendió que en la medida en que el promovido solicitó la totalidad del 15% del caudal neto de la causante, a pesar de que este no se había adjudicado en su totalidad a la Sucesión, y retuvo $24,331.99 por un servicio no prestado, contravino los Cánones 20 y 23 de Ética Profesional, *supra.*

En cuanto a los Cánones 24 y 35 del Código de Ética Profesional, *supra*, el *Informe* puntualizó que el promovido infringió ambos y faltó a los preceptos de sinceridad y honradez al intentar cobrar, mediante la comunicación y factura de 15 de febrero de 2022, una cantidad mayor a la que le correspondía por sus servicios. Ello pues, en el año 2022, los hermanos Ramos Rodríguez se reunieron con el

licenciado Colón Torres, quien les entregó el expediente y una carta explicativa en la que indicó los trámites de adjudicación pendientes, señaló que el quince por ciento (15%) del caudal neto de la causante ascendía a $64,396.34, que se había pagado un adelanto de $7,542.33 y que le adeudaban $55,854.01. Surge del *Informe* que, en dicha comunicación, el promovido omitió incluir, como adelanto de sus honorarios, el *retainer* de $1,000 y los cheques de $28,000 y $949.16 que los compradores de la propiedad de Vega Baja le habían entregado como sobrante.

Además, concluyó que si bien, el 30 de septiembre de 2013, el promovido cobró los aranceles por la presentación de la Escritura de Compraventa, este no la presentó, así como tampoco presentó la Instancia sobre los derechos hereditarios de los promoventes. No hizo lo anterior, a pesar de que ello fue parte de la gestión contratada.

Posteriormente, el licenciado Colón Torres, por conducto de su representación legal, presentó su *Reacción al Informe de la Oficina del Procurador General*. En esencia, reiteró los argumentos que esbozó en su *Contestación a la Queja*. Añadió que cometió un error en la factura del caso que le entregó a los promoventes y, a pesar de que la firmó, alegó no haberla revisado detenidamente. Como fundamento por el que consideró improcedente ordenar la devolución de la cuantía indicada por la OPG, arguyó que realizó múltiples gestiones profesionales que no cobró. Reiteró que el trámite sucesoral quedó detenido, por causas imputables a los

promoventes, quedando pendiente otorgar la Escritura de Partición de Herencia y las instancias a ser presentadas en los Registros correspondientes. Además, señaló que tomando en cuenta que los hermanos Ramos Rodríguez solicitaron su renuncia, de los honorarios contratados de $64,396.34, solo correspondería reducir $5,500.00, correspondientes al costo máximo que tiene el otorgamiento de los documentos notariales restantes. Así, solicitó que determináramos que los promoventes aún le adeudan $21,904.92.

Examinado el *Informe* y la reacción del promovido, le ordenamos a la OPG que presentara la Querella correspondiente en virtud de lo dispuesto en la Regla 14 de nuestro Reglamento, 4 LPRA Ap. XXI-B.

De conformidad con lo anterior, el 22 de julio de 2024 la OPG sometió la Querella disciplinaria, donde le imputó al licenciado Colón Torres los siguientes cargos:[9]

A. **PRIMER CARGO**: El licenciado Colón Torres infringió los preceptos del Canon 18 por su dilación injustificada en obtener el relevo del Departamento de Hacienda. Asimismo, por su dilación en presentar en el Registro los documentos siguientes: (1) Instancia Registral de 26 de septiembre de 2013, y la Resolución de Declaratoria de Herederos para inscribir la propiedad sita en Vega Baja a favor de los promoventes; (2) Escritura Núm. 10 de 28 de septiembre de 2013; (3) Escritura Núm. 7 de 3 de abril de 2014; y (4) Escritura Núm. 19 de 22 de diciembre de 2014. El Canon 18 de Ética Profesional dispone que los abogados tienen el deber de representar y defender adecuadamente los intereses de su cliente o clienta.

---

[9] En esta instancia nuestro análisis se circunscribe a los cargos que el Procurador General imputó en la Querella. Véase, *In re Pérez Riveiro*, 180 DPR 193, 200-201 (2010).

B. **SEGUNDO CARGO**: El licenciado Colón Torres infringió el Canon 20 por retener una cantidad adelantada en honorarios legales por un trabajo que no culminó. Particularmente, retuvo indebidamente una cantidad en exceso al quince por ciento acordado en honorarios legales por los bienes adjudicados a sus clientes durante la representación legal. El Canon 20 establece que el abogado debe "reembolsar inmediatamente cualquier cantidad adelantada que le haya sido pagada en honorarios por servicios que no se han prestado".

C. **TERCER CARGO**: El licenciado Edwin Colón Torres infringió el Canon 23, por lo siguiente: (1) retuvo una cantidad adelantada en honorarios legales que no le correspondía; (2) no informó en su factura de 15 de febrero de 2022, la totalidad del dinero que recibió como adelanto en honorarios; y (3) solicitó una cantidad mayor de dinero a la que le correspondía. El Canon 23 establece que "la naturaleza fiduciaria de las relaciones entre abogado y cliente exige que éstas estén fundadas en la honradez absoluta" y que "debe darse pronta cuenta del dinero u otros bienes que vengan a su posesión y no debe mezclarlos con sus propios bienes ni permitir que se mezclen".

D. **CUARTO CARGO**: El licenciado Edwin Colón Torres infringió los preceptos del Canon 24 al facturar honorarios en exceso a los que tenía derecho, según el contrato, y no acreditar todos los adelantos recibidos en honorarios en su factura de 15 de febrero de 2022. El Canon 24 de Ética Profesional establece que "[la fijación de honorarios profesionales debe regirse siempre por el principio de que nuestra profesión es una parte integrante de la administración de la justicia y no un mero negocio con fines de lucro". Además, un abogado no debe estimar sus consejos y servicios en más ni en menos de lo que realmente valen y la aptitud de un cliente para pagar no puede justificar que se cobre en exceso del valor de los servicios prestados.

E. **QUINTO CARGO**: El licenciado Colón Torres infringió el Canon 35 al faltar a los preceptos de sinceridad y honradez cuando informó erróneamente a sus clientes la cantidad que había recibido en adelanto de honorarios, y solicitó una cantidad en exceso a la que le correspondía —en consideración a los servicios prestados y los adelantos recibidos— en la

comunicación y factura el 15 de febrero de 2022. El Canon 35 establece que "la conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada".

El licenciado Colón Torres interpuso su *Contestación a la Querella*. Refutó todos los cargos y arguyó que su labor incluyó la ejecución de gestiones para las cuales no había sido originalmente contratado y que surgieron durante el transcurso de la representación, las cuales no fueron consideradas por la OPG y cuya valoración asciende a $17,500. A su vez, reconoció haber cometido un error administrativo en la factura preparada, pero sostuvo que nunca realizó gestión de cobro alguna.

Así las cosas, el 24 de junio de 2025, nombramos a la Hon. Nereida Cortés González, ex jueza del Tribunal de Apelaciones, en calidad de Comisionada Especial, para que recibiera la prueba y nos rindiera un Informe con sus determinaciones de hechos y recomendaciones. Luego de varios incidentes procesales, el 10 de febrero de 2026 se celebró la vista en su fondo.[10]

Finalmente, el 19 de marzo de 2026, la Comisionada Especial sometió ante nos el *Informe de la Comisionada Especial* (Informe de la Comisionada). En este, concluyó que el promovido cometió el primer cargo. Empero, en cuanto a los cargos segundo, tercero, cuarto y quinto, expresó que la

---

[10] *Minuta* sobre Vista en su Fondo de 10 de febrero de 2026. A la Vista comparecieron las Procuradoras Generales Auxiliares, Lcda. María C. Ortiz Toral y Lcda. Noemí Rivera de León, el licenciado Colón Torres y su representación legal, la Lcda. Daisy Calcaño López.

prueba presentada por la OPG no satisfizo el estándar requerido. Lo anterior, a pesar de que encontró como hechos probados que el licenciado Colón Torres no culminó la adjudicación de los bienes del caudal de la causante y que dirigió una factura en la que reclamó la totalidad de sus honorarios sin haber completado la partición y la adjudicación de los derechos hereditarios.

Recibido el Informe de la Comisionada, la OPG presentó su *Reacción a Informe de la Honorable Comisionada Especial*. En la misma, reafirmó su postura en torno a que la conducta del licenciado Colón Torres fue contraria a los preceptos éticos. Detalló que demostró la violación de todos los cargos imputados bajo el estándar de prueba requerido. Además, nos recomendó que evaluáramos la conducta del promovido y consideráramos la imposición de una sanción disciplinaria.

## II

Este Tribunal posee la facultad inherente para regular la práctica de la profesión legal en Puerto Rico. *In re Nicot Santana*, 213 DPR 636, 652 (2024); *In re Lewis Maymó*, 205 DPR 397, 402 (2020). Es al amparo de esa potestad disciplinaria que estamos obligados a asegurarnos de que los profesionales del Derecho que son admitidos al ejercicio de la abogacía y la notaría realicen sus funciones de forma competente, responsable y diligente. *In re Matías Balaguer*, 2026 TSPR 21, 217 DPR ___ (2025) ; *In re Radinson Caraballo*, 2025 TSPR 71, 216 DPR ___(2025); *In re Rivera Estrella*, 2025 TSPR 59, 215 DPR ___(2025).

El derogado Código de Ética Profesional preceptuaba las normas mínimas de conducta aplicables a las actuaciones de la clase togada en el desempeño de sus funciones. *In re García Suárez*, 213 DPR 1031, 1040 (2024).

### A.

El Canon 18 del Código de Ética Profesional, *supra*, declara impropio que un abogado asumiera una representación profesional al ser consciente de que no podía rendir una labor idónea y competente. De igual forma, advierte al gremio de abogados que debe evitar asumir la representación legal de una parte si "no pueden prepararse adecuadamente sin que ello apareje gastos o demoras irrazonables a su cliente o a la administración de la justicia". Íd.

Hemos resuelto que este postulado exige a los abogados rendir una labor idónea, competente, diligente, oportuna y sin dilaciones, pues actuar en contrario implica desplegar una conducta negligente, indiferente y displicente en los asuntos encomendados. *In re Sánchez Pérez*, 210 DPR 235, 262-263 (2022). A su vez, hemos establecido que el referido precepto tiene una modalidad distinta cuando se trata de la función notarial. *In re González Acevedo*, 197 DPR 360, 365 (2017); *In re Portela Martínez*, 191 DPR 84, 90 (2014). Debido a la naturaleza de las funciones del notario y la delegación de impartir fe pública, este tiene un deber mayor de diligencia y competencia. *In re González Acevedo*, *supra*; *In re Portela Martínez*, *supra*. Así, quienes ejercen la notaría demuestran su conocimiento jurídico por medio de una

ejecución correcta de sus funciones notariales. *In re Soto Aguilú*, 208 DPR 484, 501 (2021).

**B.**

Los Cánones 20 y 23 del Código de Ética Profesional, *supra*, forman parte de un mismo entramado normativo en cuanto a la devolución de honorarios se refiere. El Canon 20, *supra*, atiende lo relacionado a la renuncia a la representación legal y dispone, en lo aquí pertinente, que:

> Al ser efectiva la renuncia del abogado debe hacerle entrega del expediente a su cliente y de todo documento relacionado con el caso y reembolsar **<u>inmediatamente cualquier cantidad adelantada que le haya sido pagada en honorarios por servicios que no se han prestado</u>**. (Negrilla y subrayado suplido).

Ambos Cánones obligan al abogado a reembolsar cualquier cantidad de dinero que se le haya pagado por servicios profesionales que no ha prestado. *In re Prado Galarza*, 195 DPR 894, 905-906 (2016). Por ello, comete una falta grave el abogado que retiene para sí abonos de honorarios sin realizar la gestión a la cual se comprometió. *In re Pereira Esteves*, 131 DPR 515, 523 (1992). Del mismo modo, la demora en devolver el expediente y el dinero pagado en honorarios cuando el cliente lo solicitó constituye una violación al Canon 20 de Ética Profesional, *supra*. *In re Vilches López*, 196 DPR 479, 487-488 (2016).

Por otro lado, el Canon 23 del Código de Ética Profesional, *supra*, requiere que todo abogado o abogada dé pronta cuenta del dinero u otros bienes del cliente que vengan a su posesión. Al interpretar el deber ético recogido

en dicho Canon, pronunciamos que "la transparencia de las relaciones entre el abogado y el cliente, y la naturaleza fiduciaria de esa relación fundamentada en la honestidad absoluta es piedra angular para nuestro sistema jurídico". *In re Rosado Nieves*, 159 DPR 746, 759 (2003).

Es norma conocida que la relación entre el abogado y el cliente debe estar fundada en la honradez y la confianza mutua. *In re Ramos Bahamundi*, 2025 TSPR 43, 215 DPR ___ (2025); *In re Santiago Maldonado*, 214 DPR 1185, 1194 (2024). Bajo ese deber de transparencia, el Canon 23, *supra*, exige que el abogado rinda cuentas al cliente de "cualquier cantidad de dinero u otros bienes del cliente que vengan a su posesión, incluso aquella suma de dinero que le adelantara en concepto de honorarios de abogado". *In re Martí Rodríguez,* 194 DPR 467, 474 (2016).

Nuestra normativa jurisprudencial prohíbe diáfanamente que un abogado retenga y disponga inapropiadamente de cualquier suma de dinero que pertenezca a su cliente. *In re Bonilla Berlingeri*, 175 DPR 897, 903 (2009). Así, la mera retención de fondos que pertenecen a los clientes violenta los preceptos de este Canon, independientemente de que no esté presente la intención de apropiárselos permanentemente o que posteriormente estos sean devueltos. *In re Pellot Córdova y otro*, 204 DPR 814, 830 (2020). Inclusive, la mera dilación en la devolución de fondos es suficiente para violentar la referida norma. *In re Lajara Radinson*, 207 DPR 854, 866 (2021).

## c.

Por su parte, el Canon 24, *supra*, regulaba la fijación de honorarios y establecía que esta deberá regirse siempre por el principio deontológico de que la profesión legal es parte de la administración de la justicia y no un mero negocio con fines de lucro. Íd. Además, el referido cuerpo normativo enumeraba algunos factores que debían ponderarse al momento de fijar el valor de los honorarios.[11]

Como es sabido, en consideración a la naturaleza de la profesión legal hemos catalogado el contrato de servicios profesionales de abogado como un contrato *sui géneris*, pues está revestido de un alto contenido ético que lo presenta como "una relación contractual en abono de un interés público superior que puede trascender el interés exclusivo de las partes". *Berkan et al. v. Mead Johnson Nutrition*, 204 DPR 183, 215 (2020) (*citando a Nassar Rizek v. Hernández*, 123 DPR 360, 370 (1989)). Este Canon recomienda que los acuerdos sobre honorarios se realicen al inicio de la relación profesional y que se reduzcan a escrito, aunque ello no es obligatorio. *In re Medina Quintana*, 2025 TSPR 131, 216 DPR ___ (2025). Una vez reducido a escrito, se minimizan,

---

[11] Dicho precepto deontológico establece varios factores para fijar los honorarios tales como: el tiempo y trabajo requeridos; la novedad y dificultad de las cuestiones involucradas; si aceptar la representación legal impediría que el abogado o la abogada se haga cargo de otros casos relacionados; los honorarios acostumbradamente cobrados en el distrito judicial por servicios similares; la cuantía involucrada y los beneficios que el cliente obtendrá; la contingencia o certeza de la compensación; y la naturaleza de la gestión profesional. Canon 24 de Ética Profesional, *supra*.

necesariamente, las controversias con los clientes sobre el monto de la compensación por servicios prestados.

Cónsono con lo anterior hemos resuelto que el abogado tiene derecho a recibir una compensación razonable por los servicios prestados. Esto es, en virtud de la máxima legal *quantum meruit* (—"tanto como se merece"—), nuestro ordenamiento reconoce el derecho a recibir el valor razonable de los servicios prestados. *Cruz Pérez v. Roldán Rodríguez et al.*, 206 DPR 261, 271-272 (2021); *In re Rodríguez Mercado*, *supra*, págs. 643-644. Esta figura "busca evitar el enriquecimiento injusto, proveyendo un remedio de restitución fundamentado en elementos de justicia". *Cruz Pérez v. Roldán Rodríguez et al.*, *supra*, pág. 272. Véase, también, *Blanco Matos v. Colón Mulero*, 200 DPR 398, 413 (2018). Así, el tribunal tiene la facultad de determinar lo que considera el valor razonable de la labor realizada. *Ruiz de Val v. Morales*, 43 DPR 283, 288 (1932).

Como norma general, cuando existe un pacto de honorarios aplica el principio de *pacta sunt servanda*. Sin embargo, hemos aplicado la norma de *quantum meruit* para fijar el monto de los honorarios de abogado cuando, entre otros escenarios, un abogado es destituido por su cliente sin culminar el trabajo para el que fue contratado.[12] Íd. En estos casos, hemos resuelto que:

---

[12] Además, hemos reconocido que los honorarios de abogado podrán ser determinados a base de un *quantum meruit* cuando: (1) el abogado pactó un contrato de honorarios que se invalidó por alguna irregularidad en su ejecución; (2) el abogado se vio obligado a desistir voluntariamente de la reclamación por instrucciones del cliente, aun si esa eventualidad no se contempló en el contrato, o (3) el abogado renunció, mediando

> si se emplea a una persona para celebrar una transacción, su destitución no le da derecho a obtener la cantidad mencionada en el contrato, a menos que el asunto quede definitivamente transigido. La persona despedida puede demandar sobre un *quantum meruit*, pero raras veces tendría derecho a toda la cantidad aludida en el contrato, especialmente en ausencia de prueba sobre la consumación del compromiso […]. Íd., pág. 287.

Del mismo modo, cuando no se puedan calcular los honorarios a base de un pacto de *cuotalitis* los tribunales estimarán la compensación razonable en concepto de retribución a la labor realizada por el abogado. *Cruz Pérez v. Roldán Rodríguez*, *supra*, pág. 273; *Pérez v. Col. Cirujanos Dentistas de P.R.*, 131 DPR 545, 559-560 (1992).

Conforme a lo anterior, el peso de la prueba recae en el abogado reclamante, pues es quien alega tener derecho a ser remunerado y quien perdería ese derecho de no presentar evidencia suficiente. *Blanco Matos v. Colón Mulero*, *supra*, pág. 415. Es decir, al abogado le corresponde acreditar las gestiones profesionales realizadas, el tiempo dedicado a cada una de ellas y el valor razonable de las horas dedicadas. *Cruz Pérez v. Roldán Rodríguez*, *supra*, pág. 272. Véase, también, *Colón v. All Amer. Life & Cas. Co.*, 110 DPR 772, 777 (1981). Una vez el abogado cumpla con esa carga, el tribunal determinará la cuantía razonable tomando en

---

justa causa, a la representación antes de culminar la gestión profesional para la que fue contratado por honorarios contingentes. *Berkan et al. v. Mead Johnson Nutrition*, *supra*, págs. 216-217; *Blanco Matos v. Colón Mulero*, *supra*, pág. 416; *Cruz Pérez v. Roldán Rodríguez*, *supra*, págs. 272-273. Igualmente, la doctrina aplica cuando el cliente fallece antes de que se materialice la contingencia pactada, imposibilitando al abogado continuar con su gestión. *Cruz Pérez v. Roldán Rodríguez*, *supra*, págs. 275-276.

consideración los factores enumerados en el Canon 24, *supra*,

a saber:

> (1) el tiempo y trabajo requeridos, la novedad y dificultad de las cuestiones envueltas y la habilidad que requiere conducir propiamente el caso;
> (2) si el aceptar la representación del caso en cuestión ha de impedir al abogado que se haga cargo de otros casos que probablemente han de surgir del mismo asunto, y en los cuales existe una razonable expectativa de que de lo contrario sus servicios serán solicitados o que tal representación implique la pérdida de otros asuntos extraños al caso en cuestión o el antagonismo con otros clientes;
> (3) los honorarios que acostumbradamente se cobran en el distrito judicial por servicios similares;
> (4) la cuantía envuelta en el litigio y los beneficios que ha de derivar el cliente de los servicios del abogado;
> (5) la contingencia o certeza de la compensación; y
> (6) la naturaleza de la gestión profesional, si es puramente casual o para un cliente constante.[13]

**D.**

En múltiples ocasiones, hemos señalado que el Canon 35

del Código de Ética Profesional, *supra*, impone el deber ético

a quienes forman parte de la profesión legal de comportarse

de forma sincera y honrada. *In re Radinson Caraballo*, *supra*;

*In re Santiago Rojas*, 2025 TSPR 30, 215 DPR ___ (2025); *In re Ayala Oquendo*, 2025 TSPR 9, 215 DPR ___ (2025).

En lo que concierne, el Canon 35 del Código de Ética

Profesional, *supra*, dispone lo siguiente:

> La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.

.    .    .    .    .    .    .    .

---

[13] Véase, también, *Cruz Pérez v. Roldán Rodríguez*, *supra*, pág. 272; *Blanco Matos v. Colón Mulero*, *supra*, pág. 415.

> El abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar affidavits u otros documentos, y al presentar causas

Cónsono con ello, hemos sentenciado que este Canon se incumple por el simple hecho de un abogado o una abogada faltar a la verdad, por lo que es innecesario probar el elemento deliberativo o la intención de defraudar o engañar para infringirlo. *In re Irizarry Centeno*, 2026 TSPR 41, 218 DPR ___ (2026). Ello pues, permitir que la conducta de un abogado o de una abogada se desvíe de la sinceridad y honradez resulta inherentemente contrario al propósito de la profesión. *In re Sierra Arce*, 192 DPR 140, 147 (2014).

### III

Por otra parte, el procedimiento disciplinario contempla la designación de un Comisionado Especial, quien recibirá la prueba presentada y rendirá un Informe con sus determinaciones de hecho para nuestra consideración. *In re Cuevas Borrero*, 185 DPR 189, 201 (2012). En el pasado, sobre la figura del Comisionado Especial, hemos dicho que este ejerce una función similar a la del juzgador de instancia por lo que "se encuentra en una posición aventajada para aquilatar la prueba testifical y adjudicar credibilidad [...]". *In re Salas Arana*, 188 DPR 339, 346 (2013). Es por ello que, como norma general, sus determinaciones fácticas merecen nuestra mayor deferencia, salvo que se demuestre prejuicio, parcialidad o error manifiesto. *In re Bermúdez Meléndez,* 198 DPR 900, 908-909 (2017). Por lo tanto, aunque este Tribunal no está obligado a aceptar el Informe de un

Comisionado Especial en un procedimiento disciplinario contra un abogado o una abogada —ya que podemos adoptar, modificar o rechazar dicho Informe—, de ordinario sostenemos sus determinaciones de hecho. Íd.

Ahora bien, esa deferencia se limita a aquellos hechos que dependen de la prueba testifical recibida ante el propio Comisionado pues es quien observa la actitud y conducta de los testigos al prestar declaración. *In re Bermúdez Meléndez*, *supra*, pág. 909; *In re Ortiz Burnet*, *supra*, pág. 549. Por consiguiente, la norma de deferencia no aplica cuando la evidencia consiste en deposiciones, estipulaciones escritas u orales, o hechos incontrovertidos por las alegaciones o la prueba. Es decir, ante prueba documental, "este Tribunal está en igual posición que el Comisionado Especial para hacer sus propias determinaciones, y no podemos renunciar a ello sin afectar la efectividad de nuestra función disciplinaria". *In re Ortiz Brunet*, *supra*, pág. 549; *In re Bermúdez Meléndez*, *supra*, pág. 909. Igualmente, este Tribunal no está obligado a adoptar las conclusiones de derecho del Comisionado Especial. *In re Prado Galarza*, *supra*, pág. 907.

De otra parte, no podemos perder de vista que un trámite disciplinario conlleva el riesgo de privar al abogado de su título profesional, lo cual incide directamente sobre su derecho fundamental a ganarse el sustento mediante el ejercicio de su profesión. *In re Pérez Rojas*, 213 DPR 244, 258 (2023). En atención a esa realidad, se exige que la

prueba presentada en estos procedimientos éticos alcance el *quantum* de "prueba clara, robusta y convincente, no afectada por reglas de exclusión ni a base de conjeturas". *In re Irizarry Rodríguez*, 193 DPR 633, 667 (2015). Si bien no hemos fijado una definición precisa de este criterio probatorio, sí hemos reconocido que se trata de un estándar mucho más acucioso que la preponderancia de la evidencia, aunque "menos riguroso que la prueba más allá de toda duda razonable". *In re Rodríguez Mercado,* 165 DPR 630, 641 (2005).

Trazado así el cuadro normativo pertinente, nos corresponde ahora evaluar si el promovido cumplió con los deberes éticos que le eran exigibles.

**IV**

De entrada, debemos señalar que tras una evaluación ponderada y detenida de la prueba documental y demás escritos que obran en el expediente ante nos, así como del Informe de la Comisionada, coincidimos con esta última en cuanto a la violación al Canon 18 del Código de Ética Profesional, *supra*. Empero, su criterio no encuentra eco en nuestra consideración respecto a los cargos segundo, tercero, cuarto y quinto. Conforme indicamos, las determinaciones fácticas de la Comisionada merecen nuestra deferencia. Sin embargo, este Tribunal no está compelido a aceptar el Informe. A la luz de los hechos incontrovertidos, la prueba documental que obra en el expediente y por los fundamentos que se exponen a continuación, establecemos que la evidencia presentada con relación a la infracción de las normas éticas que recogen

los Cánones 20, 23, 24 y 35, de Ética Profesional, *supra*, satisface el estándar de prueba clara, robusta y convincente.

**A.**

El primer cargo imputó al licenciado Colón Torres una dilación injustificada en la obtención del Relevo y en la presentación ante el Registro de varios instrumentos públicos otorgados durante la representación.[14] Surge del Informe de la Comisionada que el promovido reconoció la dilación durante su testimonio, mas arguyó que no era imputable a su persona.[15] En cuanto a la Escritura de Compraventa y a las escrituras sobre cancelaciones de hipoteca, sostuvo que los compradores le habían indicado que no las presentara en el Registro. Ante tal hecho y por no haber recibido el Relevo, el licenciado decidió no presentar la Instancia sobre derechos hereditarios ya que, según este, el Registro hubiese reflejado una falsa realidad. Por último, adujo no haber recibido en su oficina el Relevo que el Departamento de Hacienda expidió el 29 de abril de 2019.

El Informe de la Comisionada concluyó que la prueba estableció una prolongada ausencia de seguimiento. Es pertinente señalar que aun cuando la presentación de la

---

[14] Específicamente le atribuyó retrasos en presentar ante el Registro: la Instancia Registral de 26 de septiembre de 2013 —junto a la Resolución de Declaratoria de Herederos— para inscribir la propiedad de Vega Baja a favor de los promoventes; la Escritura Núm. 10 de Compraventa de 28 de septiembre de 2013; la Escritura Núm. 7 sobre Cancelación de Pagaré de Oriental Bank —tenedor del pagaré de Eurobank— otorgada el 3 de abril de 2014; y la Escritura Núm. 19 de Cancelación de Pagaré de Doral Bank. Estas fueron presentadas meses luego de presentada la Queja. Véase, nota 17.

[15] *Informe de la Comisionada Especial*, pág. 39.

Escritura de Compraventa pudiera depender de que se obtuviera el Relevo y del trámite registral previo para que esta y las escrituras sobre cancelación de hipoteca pudieran inscribirse, no existía una justificación para la demora en presentar ante el Registro la Instancia sobre la Declaratoria de Herederos. La *Autorización para Efectuar Transacciones con Bienes y Valores*[16] había autorizado expresamente la inscripción de la propiedad de Vega Baja a nombre de los herederos. Por su parte, lo que el Negociado de Asistencia Contributiva y Consultas Especializadas vedó fue únicamente la inscripción a nombre de terceras personas hasta que se expidiera el Relevo oficial.[17] Ciertamente, la presentación de la Instancia sobre la Declaratoria de Herederos concernía exclusivamente a los derechos de los promoventes y nada tenía que ver con las instrucciones de los compradores. Se trataba de una gestión que podía y debía haberse realizado oportunamente. A ello se añade que los promoventes habían sufragado los costos de los aranceles correspondientes, los cuales el licenciado retuvo durante varios años sin encaminar su presentación.

---

[16] Véase, *Exhibit* 9 del *Informe de la Comisionada Especial*, págs. 20-21.

[17] La *Autorización para Efectuar Transacciones con Bienes y Valores…*, emitida por el Departamento de Hacienda como condición para la venta de la propiedad inmueble en Vega Baja, dispuso que "[d]el producto de la venta o refinanciamiento deberá preparar cheque a nombre del Secretario de Hacienda por **$1,891.00** para el pago de la contribución especial sobre la propiedad inmueble y otro [cheque] a nombre del Centro de Recaudación de Ingresos Municipales (CRIM) por **$29,574.03** para el pago de la contribución sobre la propiedad inmueble adeudada por la causante de referencia". (Negrillas y subrayado en el original). Asimismo, contenía una nota en la que se indicaba que el Registrador podía inscribir la propiedad a nombre de los herederos, pero que "[e]n caso de venta, el Registrador [de la Propiedad] no inscribirá a nombre de terceras personas hasta que esta Oficina expida el Relevo oficial". Íd.

En cuanto a los demás instrumentos públicos, en su carácter de notario, el licenciado Colón Torres no representaba a parte alguna durante el otorgamiento. Sin embargo, ello no lo eximía de las obligaciones que dimanan tanto de su función notarial como del Contrato suscrito con los promoventes. En su calidad de abogado de la Sucesión, le incumbía proteger los intereses de esta durante el trámite posterior al otorgamiento, así como gestionar la presentación e inscripción de los instrumentos públicos correspondientes. Por tanto, la decisión de los compradores de no presentar los instrumentos públicos no relevaba al promovido de esa obligación.

Desde luego, la magnitud de la dilación surge palmariamente al tomar en cuenta que el promovido se obligó a tramitar todo el procedimiento de adjudicación de los derechos hereditarios y que no fue sino hasta la presentación de la Queja —diez años luego del inicio de la representación— que el licenciado Colón Torres realizó la mayor parte de las gestiones registrales relacionadas a la inscripción de los instrumentos públicos.[18] Un abogado diligente no puede aguardar a que se presente una queja en su contra para cumplir con las obligaciones pactadas.

Por otro lado, el promovido admitió en su comparecencia que el Relevo fue expedido el 29 de abril de 2019, aunque

---

[18] La Instancia de 26 de septiembre de 2013 y la Escritura Núm. 10 de 28 de septiembre de 2013 no fueron presentadas en el Registro hasta el 15 de junio de 2023; la Escritura Núm. 7 de 3 de abril de 2014, hasta el 17 de abril de 2023; y la Escritura Núm. 19 no constaba inscrita al 19 de octubre de 2023.

adujo no haberlo recibido en su oficina. No obstante, desde el año 2013, el licenciado conocía que sin el Relevo no podría completar algunos de los trámites pendientes, y aun así no realizó gestión de seguimiento alguna durante ese período. Inclusive, cuando los promoventes se acercaron en febrero de 2022, el licenciado persistía en la falsa creencia de que el Relevo no había sido expedido. El Informe revela, además, que el promovido no ofreció justificación alguna por su inacción para solicitar el Relevo luego de celebrada esa reunión. Tal conducta sobre el inadecuado manejo y control del expediente confirma el incumplimiento del deber de diligencia que le era exigible, así como la falta de competencia en los asuntos encomendados.

Aun cuando reconocemos que la tramitación de un proceso sucesoral presupone la cooperación razonable del cliente, pues envuelve el pago de aranceles y otras gestiones que no dependen exclusivamente del abogado, y que los hechos del caso evidencian cierta dejadez de parte de los propios promoventes. Lo cierto es que, ello no puede servir de escudo ante una inacción que se extendió por más de una década. En este caso, una vez expedido el Relevo en 2019, desapareció cualquier impedimento razonable para la presentación de los instrumentos públicos. Por tanto, ante la ausencia de evidencia que demuestre actuaciones diligentes encaminadas a adelantar el asunto encomendado, concluimos que el licenciado Colón Torres infringió el Canon 18 del Código de Ética Profesional, *supra*.

**B.**

Luego de examinar la información que consta en el expediente y en los escritos sometidos por las partes, según el Derecho aplicable, no coincidimos con el criterio de la Comisionada Especial en cuanto a los Cánones 20, 23, 24 y 35 a los efectos de que no surge evidencia suficiente.[19] En virtud de nuestra potestad de adoptar, modificar o rechazar el Informe de un Comisionado Especial, procedemos a hacerlo en los términos que exponemos a continuación. Además, según hemos pronunciado, cuando estamos ante prueba documental, este Tribunal se encuentra en igual posición que la Comisionada Especial para hacer sus propias determinaciones y no podemos renunciar a ello sin afectar la efectividad de nuestra función disciplinaria.

De los hechos estipulados y de la prueba documental obrante en el expediente se desprende que el licenciado Colón Torres recibió un cheque de $949.16 correspondiente al sobrante de la cuota de mantenimiento;[20] $1,000 del *retainer* inicial, y un cheque de los compradores de la propiedad de Vega Baja por la suma de $28,000.[21] A esto se suma que recibió $7,542.33 por los trámites sucesorales, también como adelanto de los servicios contratados, para un total de $37,491.49 en concepto de honorarios.[22] Tampoco está en disputa que **las partes pactaron que el licenciado Colón**

---

[19] *Informe de la Comisionada Especial*, pág. 38.
[20] Véase, *Exhibit 20* del *Informe de la Comisionada Especial*, pág. 45.
[21] Véase, *Exhibit 27* del *Informe de la Comisionada Especial*, pág. 56.
[22] Véase, *Exhibit 14* del *Informe de la Comisionada Especial*, pág. 26.

Torres brindaría sus servicios legales en relación con todo el procedimiento de adjudicación de los derechos hereditarios y que estos servicios serían facturados a base del quince por ciento (15%) del caudal hereditario de la causante.[23]

De igual modo, no está en controversia que el promovido no completó la adjudicación de la totalidad de esos bienes, pues este admitió que no culminó el trabajo para el cual fue contratado por la Sucesión.[24] De la prueba estipulada surge, además, que el promovido no otorgó la Escritura de Partición de Herencia ni las Instancias correspondientes a las propiedades de Ciales y Manatí.[25] No obstante, el licenciado solicitó la totalidad del 15% del caudal neto pese a no haber concluido el trabajo encomendado.[26] Tras un examen desapasionado y cuidadoso de todo el expediente de este caso, incluyendo la prueba documental, concluimos que dicha

---

[23] En lo pertinente, el Contrato, de una página, suscrito entre las partes dispone lo siguiente:

> PRIMERO: La PRIMERA PARTE contrata a la SEGUNDA PARTE para que **le brinde sus servicios legales profesionales en relación con todo el procedimiento de adjudicación de los derechos hereditarios** de la PRIMERA PARTE respecto a la Sucesión de su madre Doña María del Rosario Rodríguez (en adelante denominada como la causante).
> SEGUNDO: Los servicios profesionales prestados a la PRIMERA PARTE serán facturados a base del 15% del caudal hereditario de la [c]ausante que le corresponda a la PRIMERA PARTE.
> TERCERO: Los gastos en que la SEGUNDA PARTE incurra para beneficio de la PRIMERA PARTE, tales como gastos de radicación de documentos ante el Tribunal, emplazamientos y/o citaciones, contratación de peritos, servicios de mensajero, fotocopias, sellos de rentas internas y otros relacionados serán por cuenta de la PRIMERA PARTE. La PRIMERA PARTE entregará a la SEGUNDA PARTE un depósito (Retainer Fee) no reembolsable de $1,000.00 para cubrir los gastos iniciales del caso. (Negrillas suplidas). *Exhibits 1*, *2* del *Informe de la Comisionada Especial*, págs. 1-2.

[24] *Querella*, Anejo I, Ap. pág. 86.
[25] *Querella*, Anejo I, Ap. pág. 76.
[26] Véase, *Exhibit 34* del *Informe de la Comisionada Especial*, pág. 73.

evidencia es suficiente para satisfacer el estándar que exige nuestro ordenamiento disciplinario. Procede, entonces, que examinemos la conducta del licenciado Colón Torres a la luz de los Cánones del Código de Ética Profesional.

En primer lugar, el Canon 20 de Ética Profesional, *supra*, exige que al hacerse efectiva la renuncia, el abogado reembolse cualquier cantidad que le haya sido pagada en honorarios por servicios para los que fue contratado y no prestó. Según mencionáramos, el licenciado Colón Torres pactó con la Sucesión brindar sus servicios legales profesionales por la tramitación de la totalidad del procedimiento de adjudicación de los bienes comprendidos en la herencia, entre ellos los inmuebles de Vega Baja, Manatí y Ciales. Luego de varios años, cuando los hermanos Ramos Rodríguez prescindieron de la representación del promovido, seguía inconclusa la gestión relativa a la propiedad de Vega Baja y no se había tramitado la adjudicación de los inmuebles de Manatí y Ciales —que representan la mayor parte del valor del caudal— ni otorgado la Escritura de Partición de Herencia. A pesar de ello, el licenciado Colón Torres no devolvió cantidad alguna de los $37,491.49 que había recibido por adelantado en concepto de honorarios, pese a que una porción sustancial de esa suma correspondía a servicios que nunca prestó. Ante tal cuadro fáctico y frente al hecho de que las partes no vislumbraron en el Contrato qué sucedería si la relación concluía anticipadamente, correspondía entonces recibir solamente un valor razonable

por la labor realizada. La retención de honorarios, frente a un abandono de la gestión encomendada, es precisamente la conducta proscrita por el Canon 20, *supra*.

Por otro lado, y a pesar de la prueba documental estipulada, la Comisionada Especial puntualizó que:

> [E]n su Informe la OPG consignó también que no contaba con prueba suficiente para concluir que el promovido infringió el Canon 23 al recibir de los compradores la diferencia entre las cantidades retenidas por estos, según la Escritura Num. 10, y la cantidad finalmente pagada, como adelanto a sus honorarios.

Ciertamente, los Cánones 20 y 23 obligan a un abogado a devolver los honorarios recibidos por servicios no prestados. Como cuestión preliminar, en el presente caso, resulta necesario distinguir entre el acto de recibir esos fondos y el de retenerlos. La Querella no le imputó al licenciado Colón Torres haber recibido indebidamente cantidad alguna en honorarios. Sobre esto, reconocemos que tanto el adelanto pactado en el Contrato como la diferencia de $28,000 y los $949.16 que recibió de los compradores de la propiedad de Vega Baja —estas amparadas en el acuerdo suscrito por los hermanos Ramos Rodríguez— constituyeron recibos autorizados con el consentimiento de los promoventes. Sin embargo, ambos cánones proscriben, precisamente, la retención de esos fondos sin haber completado el trabajo para el cual fueron adelantados, conducta que aquí se encontró probada.

En segundo lugar y ya más en lo atinente al Canon 23 de Ética Profesional, *supra*, esa misma retención sin reembolso

de los honorarios constituye, además, una falta a la honradez absoluta que se exige en el manejo de fondos de clientes. A ello se añade que el promovido omitió consignar en su factura del 15 de febrero de 2022 la totalidad del adelanto recibido, y reclamó la totalidad de honorarios sin haber completado cabalmente lo dispuesto en el Contrato. La Comisionada Especial encontró probado que, en la Contestación a la Queja, el licenciado no señaló defecto o error alguno en esa factura, y que no fue sino hasta su Contestación al Requerimiento de la OPG —ya bajo el escrutinio de una investigación formal— que reconoció, por primera vez, haber incurrido en un error. Por ello, es forzoso concluir que la conducta del promovido de rendir cuentas incompletas, junto con la solicitud de una suma que excedía lo que razonablemente le correspondía, contravino la norma establecida por el Canon.

En mérito de lo anteriormente expuesto, una vez terminada la relación abogado-cliente entre los promoventes y el licenciado Colón Torres, este último no podía retener la totalidad de la cuantía abonada en honorarios sin antes efectuar un análisis de la labor realizada según contratado. Al así actuar, mancilló la imagen de la clase togada y violentó el deber fiduciario.

### C.

En tercer lugar, este Tribunal ha resuelto que el abogado que es relevado de sus funciones por el cliente antes de culminar el trámite para el cual fue contratado, como

ocurre en el presente caso, tiene derecho a ser compensado a base de *quantum meruit*. Como consecuencia, al no culminar el asunto que le fue encomendado y haber sido relevado de su representación por los promoventes, el licenciado Colón Torres no tiene derecho a reclamar el pago íntegro de los honorarios pactados al quince por ciento (15%) del caudal neto de la causante. Ello pues, al no terminar su labor, claramente no existe un Contrato exigible ni mucho menos, ante la ausencia de una cláusula que vislumbrara la eventualidad de que los "servicios legales en el procedimiento de adjudicación de los derechos hereditarios" no se ejecutaran plenamente. Entendemos que aplica la doctrina del *quantum meruit* para determinar el valor razonable de los servicios efectivamente prestados por el promovido. Por lo tanto, y en vista de que no se nos ha presentado evidencia sobre dichas gestiones, las partes podrán dirimir cualquier controversia sobre deudas relacionadas en el procedimiento judicial correspondiente.

En esa misma línea, si bien es cierto que el licenciado Colón Torres otorgó la Escritura de Compraventa y canceló los pagarés a favor de Oriental Bank y Doral Bank[27], también es cierto que dichas gestiones notariales se cobraron por separado. Por tanto, estas no formaron parte de los honorarios contratados para el trámite sucesoral de liquidación y adjudicación del caudal. Como corolario, tales

---

[27] *Véanse*, *Exhibits 28, 29* del *Informe de la Comisionada Especial*, págs. 57-62.

gestiones no podrían ser consideradas para evaluar los trabajos realizados por el promovido a la luz del *quantum meruit* ni mucho menos para establecer que no existió una retención indebida de dinero por honorarios recibidos como adelanto.

A lo largo de este trámite disciplinario el promovido ha insistido con vehemencia en que realizó cabalmente todos los servicios contratados, hasta donde le fue permitido, por lo que entiende tener derecho a $59,396.34 en honorarios. Esa pretensión no resiste el menor análisis. Resulta difícil reconciliar tal reclamo con el hecho de que las dos propiedades que permanecieron sin adjudicar representan *grosso modo* el 80% del valor neto del caudal hereditario y de que el licenciado ya recibió $4,289.00 en honorarios notariales. Por lo cual, entendemos procedente que el licenciado Colón Torres les devuelva a los hermanos Ramos Rodríguez la cantidad de $37,491.49, correspondientes a la totalidad de los honorarios que este recibió por adelantado y retuvo. Así lo ordenamos.

Ahora bien, es menester indicar que, el promovido alegó haber realizado gestiones ajenas a lo contratado inicialmente en torno a las deudas existentes de la causante. Por ello, nos peticionó que aplicáramos la doctrina de *quantum meruit* para compensar sus esfuerzos. Al respecto, aun cuando la Comisionada Especial reconoció en sus determinaciones de hecho que el promovido empleó sobre cien horas en esas gestiones, la realidad es que este no aportó

prueba detallada que acredite específicamente las horas que dedicó a cada una de ellas ni el valor razonable de estas. Ante tal escenario, la Comisionada Especial no podía hacer determinaciones específicas sobre los trabajos realizados por el promovido y los gastos en los que incurrió. Sin embargo, aclaramos que, en la medida en que el promovido no presentó prueba sobre ello durante este trámite disciplinario, no nos encontramos en posición de fijar el valor de las gestiones que pudo haber realizado en torno a las deudas existentes de la causante. Por ello, cualquier reclamación por esos servicios es propia de una acción independiente.[28]

Por último, al evaluar la conducta del licenciado Colón Torres bajo el tamiz del Canon 35 de Ética Profesional, *supra*, debemos determinar si este faltó a la verdad. Surge de los hechos estipulados en el Informe de la Comisionada que en la factura, firmada y certificada como correcta, el licenciado Colón Torres no incluyó, como adelanto de sus honorarios, los cheques de $28,000.00 y $949.16 recibidos de los compradores de la propiedad de Vega Baja, ni el *retainer* inicial de $1,000. Ante ello, los promoventes remitieron una carta al licenciado Colón Torres en la que cuestionaron su contenido, solicitaron la devolución del dinero retenido en

---

[28] Como es sabido, "el abogado al que le adeuden honorarios debe entablar una demanda de Incumplimiento de Contrato y/o Cobro de Dinero contra su cliente. Esta reclamación, reconocida en el Canon 25 del Código de Ética Profesional, *supra*, debe presentarse de forma independiente y posterior al pleito para el cual el abogado fue contratado". *Blanco Matos v. Colón Mulero*, *supra*, pág. 422.

exceso y prescindieron de sus servicios legales.[29] El promovido respondió explicando los asuntos que quedaban pendientes y negó los reclamos de la Sucesión, sin reconocer error alguno en la factura. Insatisfechos, los hermanos Ramos Rodríguez le enviaron una segunda carta el 12 de septiembre de 2022 en la que solicitaron, infructuosamente, una explicación. Cabe resaltar que la Comisionada Especial encontró probado que, aún en su Contestación a la Queja presentada ante este Tribunal, el licenciado Colón Torres no indicó que la factura de 15 de febrero de 2022 contenía error alguno.

Es decir, no fue sino hasta su Contestación al Requerimiento de la Oficina del Procurador General que el licenciado Colón Torres reconoció, por primera vez, haber omitido consignar las cuantías adelantadas en concepto de honorarios hasta ese momento. Sin embargo, tal error en la información suministrada no fue traído a la atención de los promoventes en las comunicaciones anteriores entre estos. De esa manera, presentó a sus clientes un estado de cuenta que distorsionaba la realidad financiera de la relación profesional y que reflejaba un exceso de lo que realmente le correspondía en honorarios, pues indicó que lo adeudado en concepto totalizaba $55,854.01.

Indudablemente, la naturaleza fiduciaria de la relación abogado-cliente requiere un grado de transparencia aun mayor

---

[29] Véase, *Exhibit 36* del *Informe de la Comisionada Especial*, págs. 75-77.

en los asuntos de carácter económico sobre todo en un contexto en que se adelantaron ciertos honorarios. Ante tal inescapable realidad, encontramos cometida, además, la imputación bajo los Cánones 24 y 35 de Ética Profesional, *supra*.

**V**

En fin, habiendo concluido que el querellado infringió los Cánones 18, 20, 23, 24 y 35 de Ética Profesional, *supra*, nos corresponde entonces determinar cuál es la sanción disciplinaria apropiada por su conducta antiética. Al fijar la sanción, procede que evaluemos los factores siguientes: (1) la reputación del abogado en la comunidad; (2) su historial disciplinario; (3) si la conducta es una aislada; (4) si medió ánimo de lucro; (5) si presentó una defensa frívola de su conducta; (6) si ocasionó perjuicio a alguna parte; (7) si resarció al cliente; (8) si demostró aceptación o arrepentimiento sincero por la conducta que le fue imputada, y (9) otros atenuantes o agravantes que surjan de los hechos. *In re Santiago Rojas*, *supra*, págs. 27-28; *In re Soto Peña*, 213 DPR 663, 680-681 (2024); *In re Rivera Justiniano*, 212 DPR 385, 407-408 (2023); *In re* Ocasio Bravo, 209 DPR 1043, 1060-1061 (2022).

Así pues, resta que sopesemos los criterios que consideramos cuando disciplinamos a un abogado, de cara a la conducta desplegada por el licenciado Colón Torres. En atención a ello, consideramos que el promovido ha ejercido la profesión por más de treinta y siete años y no es hasta

ahora que hemos tenido la obligación de intervenir con quejas disciplinarias en su contra. Igualmente, tomamos en cuenta que el abogado les entregó el expediente a los promoventes. No obstante, es menester señalar que el licenciado no demostró estar arrepentido por la conducta exhibida. Al contrario, surge del expediente que no aceptó las faltas imputadas y medió ánimo de lucro en su proceder pues, en reiteradas ocasiones solicitó la totalidad de la aludida cuantía.

Por tanto, luego de evaluar la totalidad de las circunstancias, así como la seriedad de la conducta demostrada en el presente caso, en virtud de nuestro poder inherente de reglamentar la profesión legal, procede que suspendamos por el término de tres (3) meses al Lcdo. Edwin R. Colón Torres del ejercicio de la abogacía y la notaría. Se le exhorta al señor Colón Torres a que en el futuro acoja la recomendación de la Regla 1.2(f) de Conducta Profesional de reducir a escrito los acuerdos de representación legal, teniendo en cuenta también lo dispuesto en la Regla 1.5 sobre pactos de honorarios. *In re Rs. Conducta Prof. PR*, 2025 TSPR 64, 216 DPR ___ (2025). Se le exhorta, además, a redactar con mayor claridad sus términos y hacer constar las contingencias previsibles que pudieran surgir durante el transcurso del asunto que atiende.

**VI**

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, y a base del trato que en el pasado le hemos

dado a situaciones como esta, este Tribunal suspende de forma inmediata al Lcdo. Edwin R. Colón Torres del ejercicio de la abogacía y la notaría por el término de tres (3) meses. Habiendo cobrado honorarios en exceso, se le instruye para que, de manera inmediata, proceda a devolver la suma de $37,491.49 a los promoventes y a acreditarnos el cumplimiento con lo aquí ordenado dentro del término de treinta (30) días a partir de la notificación de esta Opinión *Per Curiam* y Sentencia.

En consecuencia, deberá notificar inmediatamente a todos sus clientes sobre su inhabilidad para continuar representándoles. Además, deberá devolver a sus clientes los expedientes de los casos pendientes, así como los honorarios recibidos por trabajos no realizados. De igual forma, deberá informar inmediatamente de su suspensión a cualquier foro judicial y administrativo en el que tenga un caso pendiente. Deberá acreditar a este Tribunal el cumplimiento con lo anterior dentro del término de treinta (30) días, contado a partir de la notificación de esta Opinión *Per Curiam* y Sentencia.

Por otro lado, en virtud de la suspensión de la notaría, se le impone el deber de notificar a todos sus clientes sobre su inhabilidad para prestar los servicios notariales contratados y devolverles tanto los expedientes como los honorarios recibidos por trabajos de índole notarial no realizados. De igual manera, tendrá que informar de su suspensión a cualquier agencia, entidad, foro judicial o

administrativo en el que tenga algún asunto de índole notarial pendiente. Deberá, además, acreditar y certificar ante este Tribunal el cumplimiento con lo anterior dentro del término de treinta (30) días, contado a partir de la notificación de esta Opinión *Per Curiam* y Sentencia. No hacerlo pudiera conllevar que no se le reinstale al ejercicio de la notaría, de solicitarlo en el futuro. La fianza que garantiza las funciones notariales del señor Colón Torres queda automáticamente cancelada. Esta fianza se considerará buena y válida por tres (3) años después de su terminación, en cuanto a los actos realizados durante el periodo en que esta estuvo vigente.

Por último, el Alguacil de este Tribunal deberá incautar la obra y el sello notarial del señor Colón Torres y entregarlos al Director de la Oficina de Inspección de Notarias (ODIN) para el correspondiente examen e informe a este Foro. Se le apercibe, además, que esta acción disciplinaria no lo exime de corregir cualquier falta que pudiera ser señalada por la ODIN en su obra notarial, así como la presentación de los índices mensuales e informes anuales adeudados.

Se dictará Sentencia en conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | | |
|--------|--|--|
| | CP-2024-0006 | Conducta Profesional |
| Edwin R. Colón Torres (TS-9,066) | | |

SENTENCIA

En San Juan, Puerto Rico a 6 de julio de 2026.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, se le suspende de forma inmediata al Lcdo. Edwin R. Colón Torres del ejercicio de la abogacía y la notaría por el término de tres (3) meses. Habiendo cobrado honorarios en exceso, se le instruye para que, de manera inmediata, proceda a devolver la suma de $37,491.49 a los promoventes y a acreditarnos el cumplimiento con lo aquí ordenado dentro del término de treinta (30) días a partir de la notificación de esta Opinión *Per Curiam* y Sentencia.

En consecuencia, deberá notificar inmediatamente a todos sus clientes sobre su inhabilidad para continuar representándoles. Además, deberá devolver a sus clientes los expedientes de los casos pendientes, así como los honorarios recibidos por trabajos no realizados. De igual forma, deberá informar inmediatamente de su suspensión a cualquier foro judicial y administrativo en el que tenga un caso pendiente. Deberá acreditar a este Tribunal el cumplimiento con lo anterior dentro del término de treinta (30) días, contado a partir de la notificación de esta Opinión *Per Curiam* y Sentencia.

Por otro lado, en virtud de la suspensión de la notaría, se le impone el deber de notificar a todos sus clientes sobre su inhabilidad para prestar los servicios notariales contratados y devolverles tanto los expedientes como los honorarios recibidos por trabajos de índole notarial no realizados. De igual manera, tendrá que informar de su suspensión a cualquier agencia, entidad, foro judicial o administrativo en el que tenga algún asunto de índole notarial pendiente. Deberá, además, acreditar ante este Tribunal el cumplimiento con lo anterior dentro del término de treinta (30) días, contado a partir de la notificación de

esta Opinión *Per Curiam* y Sentencia. No hacerlo pudiera conllevar que no se le reinstale al ejercicio de la notaría, de solicitarlo en el futuro. La fianza que garantiza las funciones notariales del señor Colón Torres queda automáticamente cancelada. Esta fianza se considerará buena y válida por tres (3) años después de su terminación, en cuanto a los actos realizados durante el periodo en que esta estuvo vigente.

Por último, el Alguacil de este Tribunal deberá incautar la obra y el sello notarial del señor Colón Torres y entregarlos al Director de la Oficina de Inspección de Notarias (ODIN) para el correspondiente examen e informe a este Foro. Se le apercibe, además, que esta acción disciplinaria no lo exime de corregir cualquier falta que pudiera ser señalada por la ODIN en su obra notarial, así como la presentación de los índices mensuales e informes anuales adeudados.

Lo acordó y manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez emite las expresiones concurrentes siguientes:

Este Tribunal hoy razona que procede sancionar al Lcdo. Edwin R. Colón Torres (licenciado Colón Torres) por infringir los Cánones 18, 20, 23, 24 y 35 del Código de Ética Profesional, 4 LPRA Ap. IX, en el ejercicio de sus funciones como abogado y notario durante los trámites de un procedimiento sucesorio. A pesar de que coincido con el raciocinio de la mayoría en cuanto a que procede decretar la suspensión del licenciado Colón Torres por el término de tres (3) meses, no estoy de acuerdo con el curso de acción propuesto sobre la devolución de los honorarios.

La Opinión *Per Curiam* colige que, ante la ausencia de prueba para determinar el valor razonable de los servicios prestados por el letrado, nos vemos impedidos de llevar a cabo un análisis bajo la medida de *quantum meruit*. A saber, como bien expone la mayoría, no estamos en posición de determinar el valor de las labores realizadas por falta de información. Es precisamente por ello que resulta irrazonable ordenar la devolución de la totalidad de los honorarios y, a su vez, reconocer que el licenciado Colón Torres prestó servicios, aunque de manera incompleta, por los cuales merece ser compensado. A tales efectos, coincido con la apreciación de la Comisionada Especial en cuanto a que la controversia sobre los honorarios pactados es un asunto que se debe dirimir ante el Tribunal de Primera Instancia en una acción

independiente. Por lo anterior, procedía acoger su recomendación y referir el asunto al foro primario para así dilucidar la cuantía involucrada.

El Juez Asociado señor Colón Pérez no intervino.


                                    Javier O. Sepúlveda Rodríguez
                                    Secretario del Tribunal Supremo